## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

**STACY M. WELLS,**
        **Plaintiff,**

**v.**                                                 **Case No.  2:12-CV-91-FtM-JES-DNF**

**Commissioner of Social Security,**
        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

Plaintiff, Stacy M. Wells, filed an application for a period of disability and disability insurance benefits (DIB) and Supplemental Security Income (SSI)[1] on April 21, 2008, alleging disability beginning February 15, 2007.   This claim was denied initially and upon reconsideration.  On February 21, 2012, Plaintiff filed a Complaint against the Commissioner of Social Security. (Doc. 1).  The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

On May 7, 2010,  a video hearing was held in Fort Myers, Florida, and Administrative Law Judge ("ALJ") Denise Pavantis presided over the hearing from Fort Lauderdale, Florida. (Tr. 32-45).  On October 29, 2010, the ALJ issued her decision finding Plaintiff not disabled. (Tr. 32-45).  The Appeals Council denied Plaintiff's Request for Review making the ALJ's decision the final decision of the Commissioner.  For the reasons set out herein, it is respectfully recommended that the decision be **reversed and remanded** pursuant to sentence

---

[1] Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

four of 42 U.S.C. § 405(g).

I.      **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

      A.      **Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

      B.      **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). The Court must "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997)).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.*  "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158-59 (citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)).  The Court must "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)).  However, the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled.  20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work.  If the claimant can still do his or her past relevant work then he or she will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if the claimant can make an adjustment to other work.  If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482

U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of February 15, 2007. (Tr. 34).  Plaintiff reported she worked May 2007 to November 2007 as an owner/operator of a medical transcription company in Massachusetts. (Tr. 34).  The ALJ determined that Plaintiff's work activity was not substantial gainful activity within the meaning of the Social Security Act (SSA). (Tr. 34).

At Step 2,  the ALJ found that Plaintiff has the following severe impairments: post traumatic stress disorder; substance addiction disorder; bipolar disorder; personality disorder (not otherwise specified); history of reflex sympathetic dystrophy of left lower extremity; and shoulder pain. (Tr. 35).

The ALJ determined that Plaintiff has a history of poly-substance abuse with sustained full remission and that there is no evidence that Plaintiff has used alcohol or drugs since November 2002. (Tr. 35).  The ALJ concluded Plaintiff's history of poly-substance abuse is not severe within the meaning of the SSA. (Tr. 35).

At  Step 3,  the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described  in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35).

In evaluating Plaintiff's mental impairments, the ALJ determined that under the listings Plaintiff had mild restriction of activities of daily living, moderate difficulties in social

-4-

functioning, moderate difficulties in concentration persistence and pace, with no episodes of

decompensation. (Tr. 36).

At Step 4, the ALJ determined that Plaintiff has the residual functional capacity

("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or

walk 6 hours total in an 8-hour worday, sit 6 hours total in an 8-hour workday, occasionally

climb ramps stairs, ladders, ropes and scaffolds, and frequently balance, stoop, kneel, crouch

and crawl. (Tr. 37).  Additionally, the ALJ determined that Plaintiff must avoid concentrated

exposure to extremes of cold, heat, and hazards. (Tr. 37).  The ALJ determined Plaintiff is

able to remember and carry out simple instructions, concentrate and persist for two hour

segments, maintain normal attendance and complete a normal work week. (Tr. 37).  Further,

the ALJ found that Plaintiff has some, but not substantial limits in the ability to relate

appropriately to others, accept instructions and respond to criticism (Tr. 37).  The ALJ found

that Plaintiff is unable to perform her past relevant work.  (Tr. 43, citing 20 C.F.R. §§

404.1565 and 416.965).

At Step 5, the ALJ determined that there are jobs that exist in significant numbers in

the national economy that can be performed by someone with claimant's age, education, work

experience, and RFC. (Tr. 43).  The ALJ concluded that Plaintiff was not disabled. (Tr. 44).

## II.      REVIEW OF FACTS

### A.      Medical Record Evidence

On April 21, 2008,  Plaintiff filed her application for disability insurance benefits

alleging disability beginning February 15, 2007.  The  Decision of the ALJ dated October 29,

2010, denied Plaintiff's claim for benefits.  (Tr. 10-24).

Plaintiff  was born on July 19, 1967, and was 43 years old at the time of the ALJ's

decision.  Plaintiff has a high school education, a Bachelor's of Science degree and a Master's degree. (Tr. 40).  Plaintiff has past relevant work as an owner/operator of a  transcription company. (Tr. 3).  Plaintiff also worked as a retail clerk, legal secretary, and librarian (Tr. 274).

On October 16, 2002, Plaintiff was admitted to Butler Hospital, Providence, Rhode Island and examined by Dr. Brandon C. Qualls, M.D. (Tr. 314).  Plaintiff's chief complaint was that she was "from dysfunction junction." (Tr. 314).  Dr. Qualls, M.D., noted that Plaintiff had a history of drug abuse and had been using marijuana daily for approximately 20 years but had recently quit. (Tr. 314).  Dr. Qualls noted that Plaintiff was a binge eater, that she had difficulties with activities of daily living, that she had passive suicidal ideation. (Tr. 314).  Dr. Qualls reported that Plaintiff participated in an eating disorder program and was advised to start a 1500 calorie diet in order to stabilize her eating. (Tr. 314).  Plaintiff's blood sugars improved and she was discharged on October 21, 2002.  Upon discharge, Plaintiff's affect had improved and she was less depressed.  Plaintiff's primary diagnosis was eating disorder, with depression, diabetes and sleep apnea. Plaintiff was to follow-up with out-patient psychotherapy and for out-patient medication management. (Tr. 315).

Records show that Plaintiff met with Dr. David Kahn, Benefit Street Psychiatry from June 2004 until July 27, 2006.   Notes reveal Plaintiff's daily issues, medications and amounts being prescribed, and moods. (Tr. 328-333).

On November 3, 2006, Plaintiff underwent surgery due to a right lateral breast abscess, which upon incision, drainage, and debridement was found to have a nonabsorbable suture within it. (Tr. 343).  The suture was from a previous shoulder surgery. (Tr. 343).  Plaintiff tolerated the procedure well and had no complications (Tr. 343-344).

On October 28, 2007, Plaintiff underwent surgery to have a soft tissue removed from the dorsum of her left foot. (Tr. 398-401).  The procedure was performed by Dr. Narmo L. Ortiz, D.P.M., who noted that the soft tissue mass "may be associated with rheumatoid arthritis, however, similar nodules can be seen in patients without rheumatoid arthritis." (Tr. 400).  Dr. Ortiz noted that Plaintiff tolerated the procedure well. (Tr. 400).

On July 21, 2008, Plaintiff presented to Chris J. Marino, M.D., for a neurological consult regarding numbness and pain in her left foot. (Tr. 431-435).  Plaintiff advised she was in the process of Social Security disability evaluation and "wants to make sure that this problem is well documented ..." (Tr. 431).  Dr. Marino found no evidence of radiculopathy. (Tr. 434).  Dr. Marino noted that Plaintiff's symptoms of pain "are also wrapped up in a more comprehensive emotional/ chronic multi-focal pain type of process, well beyond the scope of my practice." (Tr. 434).  Dr. Marino provided that Plaintiff may benefit from consultation with a chronic pain management specialist and also close follow-up with her psychiatrist. (Tr. 434).

On July 23, 2008, Plaintiff was seen by Claudia Zsigmond, Psy.D., for a general clinical evaluation with mental status. (Tr. 440).  Dr. Zsigmond's prognosis for Plaintiff was poor due to Plaintiff's mental illness. (Tr. 443).  Dr. Zsigmond noted that due to Plaintiff's refusal to discuss her drug use and Plaintiff's emotional lability related to personality disorder, the nature of Plaintiff's depressive symptoms is unclear. (Tr. 443).  Dr. Zsigmond diagnosed Plaintiff as having Depressive Disorder, NOS, and recommended that Plaintiff continue to receive appropriate medical care.  Dr. Zsigmond als provided that Plaintiff should undergo a psychiatric re-evaluation and receive individual counseling to enhance coping skills. (Tr. 443).

On July 31, 2008, Thurben James (title unknown) performed a physical RFC at the request of the SSA. (Tr. 445-452).  Mr. James determined that Plaintiff could occasionally lift

50 lbs., frequently lift 25 lbs., stand/walk 6 hours in an 8- hour workday, sit (with normal breaks) 6 hours in an 8-hour workday, and push and/or pull without limit. (Tr. 446).  Mr. James found that Plaintiff had unlimited manipulative limitations, visual limitations, postural limitations, communicative limitations or environmental limitations (Tr. 446-450).  Mr. James determined that Plaintiff's MER supported her allegations of a MDI, but that there were no objective findings to support the alleged severity of Plaintiff's symptom. (Tr. 451).

On August 1, 2008, Plaintiff was seen by Martha Putney, Ph.D., who completed a Psychiatric Review Technique Form at the request of the SSA. (Tr. 453-470).  Dr. Putney determined that Plaintiff had no restriction of daily living activities, moderate difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace and no episodes of decompensation, of extended duration. (Tr. 463).

On August 1, 2008, Martha Putney, Ph.D., also completed a Mental Residual Functional Capacity Assessment at the request of the SSA. (Tr. 467-470).  Dr. Putney found that Plaintiff was moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and moderately limited in her ability to respond appropriately to changes in the work setting. (Tr. 468).  Dr Putney found that Plaintiff was not significantly limited under any other summary conclusions. (Tr. 467-468).  Dr. Putney observed that Plaintiff "has moderate decrease in social but is able to understand and remember complex work related procedures and instructions, be cooperative and appropriate, adapt to a work setting with limited interpersonal responsibility, make work decisions, and perform complex mental tasks when clean and sober and as her physical limitations permit." (Tr. 467-469).

On October 23, 2008, Plaintiff was seen by Donn O. Fuller, M.D., in regards to left

foot and ankle pain. (Tr. 482-484).  Dr. Fuller obtained an x-ray of Plaintiff's left foot which

were negative. (Tr. 483).

On November 10, 2008, Timothy Foster, Ph.D., completed a Psychiatric Review

Technique form at the request of the SSA. (Tr. 484-498).  Dr. Foster recorded the following

notes:

> Cl is 41 yr old at recon alleging bipolar.  Cl states in application that cl has no
> concentration.  'Very sense of memory' (I don't know what cl means by that
> statement.)  Cl states has flashbacks from PTSD.  Cl states, 'I can't listen to the
> voice anymore'.  (What is meant by that statement is that a physician and his
> family were killed).  They were family friends.  She did not witness this but the
> event traumatized her and she has not been able to hear a Dr.'s voice on the
> medical transcription technology without thinking about the dear Dr's family.
> Cl has hx of work as legal secretary, a web master and worked as a private
> medical transcriptionist for 7 years.  Cl reports having a Master's degree.  It
> that is correct cl has been under employed.  Cl is on meds for anxiety and
> depression.  Cl admits to regular cannabis dependence (daily) since age 15.  Hx
> shows an in-patient psych and substance treatment for a week in 2002.  Cl is
> able to prepare meals, and do other normal daily tasks.  She is able to and does
> chat on line, plays video games and listens to music and does light
> housekeeping.  She appears to be cognitively intact but the depression and
> traumatic reaction appears to cause moderate limits in social and concentration
> function.  See MRFC.  Although the DLI condition appears to be unchanged
> from current condition I have no MSE or medical records from prior to DLI so
> that is rated as insufficient evidence. (Tr. 485-497).

Dr. Foster also completed a Mental Residual Function Capacity Assessment on the

same date and recorded the following:

> Memory is evaluated and found to be within normal limits.  Cl is able to
> understand, remember and carry out simple one and two step instructions; Cl is
> able to maintain CPP for two hour intervals, maintain regular attendance and
> complete a normal work week with moderate limits.  Her concentration appears
> to be impaired by traumatic memories of a dead Dr. and family; Cl appears to
> have moderate limits in the ability to relate appropriate to others including
> coworkers and supervisors on a sustained basis and is able to accept
> instructions and respond appropriately to criticism.  She generally relates by
> way of internet and not in person.  I am rating that as a moderate limit since it
> appears to be from the PTSD; and Cl has moderate limits in the ability to adapt
> to changes in the workplace.  Cl is able to sustain concentrated, task oriented

activity (Tr. 500-501).

On November 16, 2008, Murthy Ravipati, M.D., completed a Physical Residual Functional Capacity Assessment requested by the SSA. (Tr. 503-510).  Dr. Ravipati found that Plaintiff could occaisionally lift 20 lbs, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday and push-pull without limit. (Tr. 504).  Dr. Ravipati observed that multiple exams including those of July '08 and October '08 are showed Plaintiff had full range of back and extremities. (Tr. 504).  Dr. Ravipati found that Plaintiff was having no motor sensory deficits and had equal reflexes. (Tr. 505).  Dr. Ravipati noted that Plaintiff had an intact gait and that the x-ray of her left foot was negative for symptomatology. (Tr. 5005).  Given these findings, Dr. Ravipati explained that only mild reductions were warranted at the time. (Tr. 505).  Dr. Ravipati concluded that Plaintiff's allegations as to the severity of her symptoms were not entirely credible. (Tr. 508).

On December 15, 2009, Plaintiff was treated by Michael E. Frey, M.D., of Advanced Pain Management and Spine Specialists for persistent pain. (Tr. 705-706).  Dr. Frey noted that Plaintiff had been exhibiting symptoms consistent with a neuralgic pain syndrome involving the left tibial nerve and lower left leg. (Tr. 705).  Plaintiff was evaluated in the pain clinic and scheduled for a therapeutic neural block of the nerves suspected of causing pain. (Tr. 705).  Dr. Frey remarked that the Plaintiff tolerated the procedure well. (Tr. 705-706).

On April 22, 2010, Dr. Nelson A. Hernandez completed a Mental RFC Assessment, a Psychiatric Review Technique form # 12.04, a Psychiatric Review Technique form #12.06, a Psychiatric Review Technique form #12.08, and a medical statement regarding PTSD form # 8:64. (Tr. 604-618).  Dr. Hernandez noted in his Mental RFC that Plaintiff had poor concentration, poor planning, and a history of mania and unpredictable mood swings. (Tr.

606).  Dr. Hernandez noted that Plaintiff had marked difficulties in maintaining concentration, persistence or pace, easy distractibility, difficulty concentrating, and repeated episodes of decompensation, each of extended duration. (Tr. 612, 614).  Further, Dr. Hernandez noted that Plaintiff had autonomic hyperactivity, recurrent and intrusive recollections of a traumatic experience, marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence or pace. (Tr. 612).  Dr. Hernandez observed that Plaintiff had persistent disturbance of mood or affect, marked difficulties in maintaining social functioning and repeated episodes of decompensation, each of extended duration. (Tr. 614). In the medical statement concerning PTSD, Dr. Hernandez noted that Plaintiff had "pervasive loss of interest in almost all activities, psychomotor agitation or retardation, difficulty concentrating or thinking, generalized persistent anxiety and recurrent recollections of traumatic experience." (Tr. 616).  Dr. Hernandez found Plaintiff's work limitations to be in the moderately impaired range with Plaintiff markedly impaired as to "the ability to understand and remember detailed instructions" and markedly impaired in "the ability to maintain attention and concentration for extended periods." (Tr. 616, 617-618).

On May 25, 2010, Plaintiff was given a prescription by Michael Frey, M.D. for physical therapy for a left ankle sprain. (Tr. 714).  Dr. Frey noted that physical therapy was needed to "improve strength, endurance, ROM to decrease functional limitations." (Tr. 714). Plaintiff was provided a urine sample which was positive for marijuana and benzodiazepines. (Tr. 714).

**B.    Vocational Expert Testimony**

At the video hearing held before the ALJ on May 7, 2010, Vocational Expert Joyce Ryan (the "VE") testified as follows. (Tr. 81-95).  The VE testified that Plaintiff had

previously worked as a medical transcriber, as a librarian, as a sales clerk, as a legal secretary,

and as a web master. (Tr. 82). The ALJ then asked the following question:

> Assuming a younger individual with a high school education and the same past
> relevant work as the Claimant, with a residual functional capacity for work per the CV
> assessment at Exhibit 15F for light exertion defined in the Social Security regulations
> and in addition such an individual could occasionally climb ramps, stairs, ladders,
> scaffolds – ropes or scaffolds. Frequently balance, stoop, kneel, crouch and crawl.
> Such an individual must avoid concentrated exposure to extremes of cold or heat and
> must avoid concentrated exposure to hazards. In addition , the State Agency
> assessment at Exhibit 14F, such an individual is able to understand, remember and
> carry out simple one and two-step instructions. Such an individual is able to maintain
> concentration, persistence and pace for two-hour intervals, maintain regular attendance
> and complete a normal work week. Such an individual would have some, but not
> substantial limitations in relating appropriately to others, including coworkers and
> supervisors on a sustained basis. Such an individual is able to accept instructions and
> respond appropriately to criticism. Such an individual would have some, but not
> substantial limitations in adapting to changes in the work place. Could such an
> individual perform the Claimant's past work**?**

(Tr. 83). The VE testified "No, Your Honor." (Tr. 83). The VE testified that such an

individual could perform the unskilled work at the light level of exertion dealing mostly with

things such as factory setting in assembly and sorting, like machine tending and inspecting.

(Tr. 83). Such jobs include assembler of small products, assembler of printed products, and

copying machine operator. (Tr. 83-84).

> The ALJ then asked the VE the following question:

> Assuming an individual of the same age, education and past relevant work as the
> Claimant with the residual functional capacity for work exertional limitation as stated
> in my first hypothetical and in addition such an individual would have marked, as
> defined as between ½ and 2/3 of an eight-hour work day limitations in the following
> areas: ability to understand and remember short and simple instructions; understand
> and remember detailed instructions; carry out detailed instruction; sustain an ordinary
> routine without special supervision; make simple work-related decisions; respond
> appropriately to changes in the work setting; travel in unfamiliar places; set realistic
> goals or make plans independently of others. For the benefit of the hearing monitor,
> this is based on Exhibit 21F, Dr. Hernandez's assessment. In addition, such an
> individual would have moderate limitations defined as 1/3 to ½ of the day in the
> following areas: remembering locations and work-like procedures; carrying out very

short and simple instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; working in coordination with or proximity of others without being distracted by them; making simple work – I'm sorry about that – completing a normal work day and work week without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public, asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism of supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; being aware of [inaudible], could such an individual perform the Claimant's past work?

(Tr. 84-85).  The VE responded that such an individual could not perform Plaintiff's past work and would be highly unlikely to perform any other work. (Tr. 85).

The VE was then examined by Plaintiff's attorney.  The VE testified that if an individual was limited to 1/3 to 50% of an eight hour day in the ability to remember work-like procedures, such a limitation would not, in and of itself, affect the unskilled jobs. (Tr. 86). The VE explained that work at this level is repetitive and once it is learned, it is done mechanically, without thinking. (Tr. 87).  The VE testified that the moderate limitation of being unable to maintain attention and concentration for extended periods would not affect unskilled work because such jobs are performed mechanically. (Tr. 87).  The VE testified that an individual that did not have the ability to perform activities within a schedule would not be able to maintain such jobs. (Tr. 88).  The VE testified that a person missing more than a day a month in whatever configuration or consistently late or absent would not be able to maintain such jobs. (Tr. 88).  The VE testified that such jobs involve no interaction with the public and limitations on a worker's ability to interact with the public does not affect the worker's ability to do the job. (Tr. 89).  The VE testified that there is little change in the work setting for unskilled jobs. (Tr. 89).  The VE testified that if one is frequently unable to meet production

-13-

goals and rates then the person would not be able to maintain an unskilled job. (Tr. 90).  The

VE testified that there would be some jobs for a hypothetical individual with the same age and

background as Plaintiff and who was limited 50% to 2/3 of an eight-hour day with the ability

to make simple work-related decisions, because there is no decision making in unskilled jobs.

(Tr. 90-91).  The VE testified that if a hypothetical individual has constant shoulder pain and

the inability to lift their arms occasionally, such a person could not perform unskilled work

because such jobs require workers to lift their arms above their waists. (Tr. 94-95).

## III.    SPECIFIC ISSUES AND CONCLUSIONS OF LAW

Plaintiff raises eight issues in her Motion for Summary Judgment (Doc. 120) which the

Court construes as Plaintiff's Memorandum in Support of the Complaint.  The eight issues as

stated by Plaintiff are as follows:

1)    Additional evidence is available that substantially alters the ALJ's decision. This evidence supports the claimant's allegations and warrants a fully favorable decision by the Appeals Council a remand to the ALJ for a new hearing.

2)    The ALJ's denial of benefits at step 5 of the sequential evaluation review process is inconsistent with the severity of her impairments and degree of functional limitations secondary the presence of clinically established RSD and severe mental disorders.

3)    The Claimant's restricted physical and mental residual functional capacity does not allow for the performance of jobs cited by the vocational expert.

4)    The ALJ's mental residual functional capacity and finding the claimant is able to concentrate and persist for 2 hour segments, maintain normal attendance and complete a normal work week, and that she has some, but not substantial, limitations in her ability to relate appropriately to others, accept instructions, and respond to criticism is vague and does not constitute a valid Mental Residual Functional Capacity.

5)    The ALJ's failure to consider the effect of claimant's obesity on her Residual Functional Capacity as directed by SSR 02-1 constitutes

-14-

reversible error.

6)     The ALJ erred in not affording controlling weight to statements of
       treating and examining physicians.

7)     The ALJ's failure to comply with SSR 96-6 constitutes reversible error.

8)     The claimant's statements and testimony regarding pain and functional
       limitations are supported by objective medical findings. The claimant's
       description of pain/symptoms and resulting functional limitations are
       supported by all 7 factors found in 20 CFR 404.1529, 416.929, and SSR
       96-7p.

(Pl.'s Br. at 1-2).

        Plaintiff's first issue confuses two very distinct areas of law regarding additional

evidence.  Plaintiff argues that the additional evidence that she attached to her Memorandum

should be considered by the Court.  This additional evidence was never submitted to the ALJ

nor to the Appeals Council.  Plaintiff also argues that the Appeals Council erred by not

properly considering additional evidence which was submitted to the Appeals Counsel but not

submitted to the ALJ.

        The additional evidence that was presented to the Court and not to the administrative

agency must be considered under a Sentence Six analysis, whereas additional evidence

submitted to the Appeals Council is determined under a Sentence Four analysis.  Sentence Six

provides a federal court "with the power to remand the application for benefits to the

Commissioner for the taking of additional evidence upon a showing 'that there is new

evidence which is material and that there is good cause for the failure to incorporate such

evidence into the record in a prior proceeding.'" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496

F.3d 1253, 1261 (11th Cir. 2007) (quoting 42 U.S.C. § 405(g)).  Sentence Four provides that

federal courts have the "power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the case for a rehearing.'" *Id*. (quoting 42 U.S.C. § 405(g)).

Sentence Six remands are "entirely different" from Sentence Four remands. *Id*. at 1267. Sentence Six allows a claimant the opportunity to present new and material evidence to the district court that was not available to the Commissioner or the Appeals Council. *Id*. The evidence, must be new and material and not a part of the administrative record and the claimant must show good cause. *Id*. Therefore, the new medical evidence attached to the Memorandum must be analyzed under a Sentence Six analysis. However, prior to the Court considering this new evidence, the Court will first consider whether the new evidence submitted to the Appeals Council was properly considered.

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Flowers v. Comm'r. of Soc. Sec. Admin*, 441 Fed. App'x[2]. 735, 745 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.900(b), 416.1470(b) and *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§ 404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id*.

---

[2]     Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Plaintiff argues that the Appeals Council erred because it did not properly consider additional evidence that Plaintiff submitted to the Appeals Council after the ALJ issued her decision. (Pl.'s Br. at 12-13). Further, Plaintiff argues that the Appeals Council erred in failing to remand the case back to the ALJ on the basis of new and material evidence. The Commissioner argues that substantial evidence in the record as a whole supports the ALJ's decision and that the additional evidence submitted to the Appeal's Council would not change the ALJ's decision. The additional evidence submitted to the Appeals Council was the following: (1) physical therapy treatment records for June 2 to July 2, 2010; (2) medical records from Dr. Bradley Troupe for February 16 to 18, 2011; (3) medical records from Dr. Michael Frey for December 15, 2009 to June 1, 2010; (4) records from Dr. Nelson Hernandez for May 5, 2010 to June 27, 2011; and, (5) records from Dr. Dean Traiger for 2011. (Tr. 5). Some of this additional evidence predates the date of the ALJ's decision and falls within the requirement that it relates to the period on or before the date of the ALJ's hearing decision of October 29, 2010. Plaintiff properly presented new evidence to the Appeals Council.

When new evidence is properly submitted to the Appeal Council, and the Appeals Council denies review, the Appeal Council must show in its denial that it "has adequately evaluated the new evidence." *Flowers v. Comm'r of Soc. Sec. Admin.*, 441 Fed. App'x 737, 745 (11th Cir. 2011) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)). The review of the evidence cannot be a rubberstamp, and if the Appeals Council merely "'prefunctorily adheres'" to the ALJ's determination, then the Court must remand the action for a determination of Plaintiff's disability eligibility by reviewing the entire record. *Id*. (citations omitted).

In the instant case, the Appeals Council provided the following as its evaluation of the

case and the new evidence:  "In looking at your case, we considered the reasons you disagree

with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

We found that this information does not provide a basis for changing the Administrative Law

Judge's decision".  (Tr. 1-2).  The Appeals Council acknowledged receiving the evidence but

failed to evaluate it, and did no more than perfunctorily adhere to the ALJ's decision.  *See*

*Bowden v. Comm'r of Soc. Sec. Admin.*, 2012 WL 2179119, *8  (M.D. Fla. June 13, 2012)

(finding that the Appeals Council inadequately evaluated new evidence when it used the same

language to deny benefits as was used by the Appeals Council in the instant case).  The Court

must remand the case to the Commissioner when the Appeals Council fails to evaluate the

new evidence. Even if this new evidence is not likely to change the outcome of the

administrative decision, it is not for the Court "'to decide facts anew, reweigh the evidence, or

substitute [its] judgment for that of the [Commissioner].'" *Id*. (citing *Dyer v. Barnhart*, 395

F.3d 1206, 1210 (11th Cir. 2005)). If the Court considered the evidence submitted to the

Appeals Council but not evaluated by it, then the Court would be deciding facts anew,

reweighing the evidence, or substituting its judgment for that of the Commissioner.

   Based upon the Court finding that the final decision of the Commissioner is not

supported by substantial evidence due to the Appeals Council failing to evaluate the new

evidence properly submitted, the Court will not address the other seven issues raised by

Plaintiff.  On remand, the Commissioner should insure that the ALJ considers all of the

evidence in the case, and addresses the other issues raised by Plaintiff.

## IV.    CONCLUSION AND RECOMMENDATION

   The Court finds that  the Commissioner's decision is not consistent with the

requirements of law and supported by substantial evidence.

Therefore, it is respectfully recommended that the decision of the Commissioner be **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405(g) because the Appeals Council failed to evaluate new evidence submitted to it. Upon remand, it is recommended that the Commissioner should insure that the ALJ considers all of the evidence in the case, and addresses the other issues raised in this action.

In Chambers, Fort Myers, Florida, this 20th day of August,  2013.


DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


### Notice to Parties

 Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.


Copies to counsel of record