# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

**STACY M. WELLS,**

　　　　**Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　**Case No.  2:12-CV-91-FtM-29DNF**

**COMMISSIONER OF SOCIAL SECURITY,**

　　　　**Defendant.**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff, Stacy M. Wells, filed an application for a period of disability, Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on April 21, 2008, alleging disability beginning February 15, 2007.　 This claim was denied initially and upon reconsideration.　On February 21, 2012, Plaintiff filed a Complaint against the Commissioner of Social Security. (Doc. 1).　 The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

On May 7, 2010, a video hearing was held in Fort Myers, Florida, and Administrative Law Judge Denise Pasvantis (the "ALJ") presided over the hearing from Fort Lauderdale, Florida. (Tr. 32-45).　On October 29, 2010, the ALJ issued her decision finding Plaintiff not disabled. (Tr. 32-45).　The Appeals Council denied Plaintiff's Request for Review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).　On August 20, 2013, this Court filed a Report and Recommendation (Doc. 20) recommending that the case be reversed

---

[1] Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. _Patterson v. Bowen_, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

and remanded on the grounds that the Appeals Council failed to evaluate new evidence submitted to it. (Doc. 20 p. 19).   On September 18, 2013, the District Court issued an Opinion and Order (Doc. 22) rejecting the Report and Recommendation and affirming the decision of the Commissioner of Social Security as to the adequacy of the articulation of the Appeals Council. The District Court recommitted the case to this Court for a Report and Recommendation on the other issues raised by Plaintiff.   For the reasons set out herein, it is respectfully recommended that the decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

### A.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Court must "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997)).   "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Id.*   "Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision

reached is supported by substantial evidence." *Crawford*, 363 F.3d at 1158-59 (citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)).  The Court must "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)).  However, the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled.   20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work.  If the claimant can still do his or her past relevant work then he or she will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if the claimant can make an adjustment to other work.  If the claimant can make an adjustment to other work, then the claimant will not be found disabled.

20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987);  *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty*, 245 F.3d at 1278 n.2.

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of February 15, 2007. (Tr. 34).  Plaintiff reported she worked May 2007 to November 2007 as an owner/operator of a medical transcription company in Massachusetts. (Tr. 34).  The ALJ determined that Plaintiff's work activity was not substantial gainful activity within the meaning of the Social Security Act (SSA). (Tr. 34).

At Step 2, the ALJ found that Plaintiff has the following severe impairments: post traumatic stress disorder; substance addiction disorder; bipolar disorder; personality disorder (not otherwise specified); history of reflex sympathetic dystrophy of left lower extremity; and shoulder pain. (Tr. 35).

The ALJ determined that Plaintiff has a history of poly-substance abuse with sustained full remission and that there is no evidence that Plaintiff has used alcohol or drugs since November 2002. (Tr. 35).  The ALJ concluded Plaintiff's history of poly-substance abuse is not severe within the meaning of the SSA. (Tr. 35).

At  Step 3,  the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described  in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 35).

In evaluating Plaintiff's mental impairments, the ALJ determined that under the listings Plaintiff had mild restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration persistence and pace, with no episodes of decompensation. (Tr. 36).

At Step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday, occasionally climb ramps stairs, ladders, ropes and scaffolds, and frequently balance, stoop, kneel, crouch and crawl. (Tr. 37).   Additionally, the ALJ determined that Plaintiff must avoid concentrated exposure to extremes of cold, heat, and hazards. (Tr. 37).   The ALJ determined that Plaintiff is able to remember and carry out simple instructions, concentrate and persist for two hour segments, maintain normal attendance and complete a normal work week. (Tr. 37).   Further, the ALJ found that Plaintiff has some, but not substantial limits in the ability to relate appropriately to others, accept instructions and respond to criticism (Tr. 37).   The ALJ found that Plaintiff is unable to perform her past relevant work.  (Tr. 43, citing 20 C.F.R. §§ 404.1565 and 416.965).

At Step 5, the ALJ determined that there are jobs that exist in significant numbers in the national economy that can be performed by someone with claimant's age, education, work experience, and RFC. (Tr. 43).  The ALJ concluded that Plaintiff was not disabled. (Tr. 44).

## II.        REVIEW OF FACTS

### A.    Medical Record Evidence

On April 21, 2008, Plaintiff filed her application for disability insurance benefits alleging disability beginning February 15, 2007.   The Decision of the ALJ dated October 29, 2010, denied Plaintiff's claim for benefits.  (Tr. 10-24).

Plaintiff was born on July 19, 1967, and was 43 years old at the time of the ALJ's decision.  Plaintiff has a high school education, a Bachelor's of Science degree and a Master's degree. (Tr. 40).  Plaintiff has past relevant work as an owner/operator of a transcription company. (Tr. 3).  Plaintiff also worked as a retail clerk, legal secretary, and librarian (Tr. 274).

On October 16, 2002, Plaintiff was admitted to Butler Hospital, Providence, Rhode Island and examined by Brandon C. Qualls, M.D. (Tr. 314).  Plaintiff's chief complaint was that she was "from dysfunction junction." (Tr. 314).  Dr. Qualls noted that Plaintiff had a history of drug abuse and had been using marijuana daily for approximately 20 years but had recently quit. (Tr. 314).  Dr. Qualls noted that Plaintiff was a binge eater, that she had difficulties with activities of daily living, that she had passive suicidal ideation. (Tr. 314).  Dr. Qualls reported that Plaintiff participated in an eating disorder program and was advised to start a 1500 calorie diet in order to stabilize her eating. (Tr. 314).  Plaintiff's blood sugars improved and she was discharged on October 21, 2002.  Upon discharge, Plaintiff's affect had improved and she was less depressed.  Plaintiff's primary diagnosis was eating disorder, with depression, diabetes and sleep apnea.  Plaintiff was to follow-up with out-patient psychotherapy and for out-patient medication management. (Tr. 315).

Records show that Plaintiff met with Dr. David Kahn, Benefit Street Psychiatry from June 2004 until July 27, 2006.  Notes reveal Plaintiff's daily issues, medications and amounts being prescribed, and moods. (Tr. 328-333).

On November 3, 2006, Plaintiff underwent surgery due to a right lateral breast abscess, which upon incision, drainage, and debridement was found to have a nonabsorbable suture within it. (Tr. 343).  The suture was from a previous shoulder surgery. (Tr. 343).  Plaintiff tolerated the procedure well and had no complications (Tr. 343-344).

On October 28, 2007, Plaintiff underwent surgery to have a soft tissue removed from the dorsum of her left foot. (Tr. 398-401).  The procedure was performed by Narmo L. Ortiz, D.P.M., who noted that the soft tissue mass "may be associated with rheumatoid arthritis, however, similar nodules can be seen in patients without rheumatoid arthritis." (Tr. 400).  Dr. Ortiz noted that Plaintiff tolerated the procedure well. (Tr. 400).

On July 21, 2008, Plaintiff presented to Chris J. Marino, M.D., for a neurological consult regarding numbness and pain in her left foot. (Tr. 431-435).  Plaintiff advised she was in the process of Social Security disability evaluation and "wants to make sure that this problem is well documented ..." (Tr. 431).  Dr. Marino found no evidence of radiculopathy. (Tr. 434).  Dr. Marino noted that Plaintiff's symptoms of pain "are also wrapped up in a more comprehensive emotional/ chronic multi-focal pain type of process, well beyond the scope of my practice." (Tr. 434).  Dr. Marino provided that Plaintiff may benefit from consultation with a chronic pain management specialist and also close follow-up with her psychiatrist. (Tr. 434).

On July 23, 2008, Plaintiff was seen by Claudia Zsigmond, Psy.D., for a general clinical evaluation with mental status. (Tr. 440).  Dr. Zsigmond's prognosis for Plaintiff was poor due to Plaintiff's mental illness. (Tr. 443).  Dr. Zsigmond noted that due to Plaintiff's refusal to discuss her drug use and Plaintiff's emotional lability related to personality disorder, the nature of Plaintiff's depressive symptoms is unclear. (Tr. 443).  Dr. Zsigmond diagnosed Plaintiff as having depressive disorder and recommended that Plaintiff continue to receive appropriate medical care.  Dr. Zsigmond also provided that Plaintiff should undergo a psychiatric re-evaluation and receive individual counseling to enhance coping skills. (Tr. 443).

On July 31, 2008, Thurben James[2] performed a physical RFC at the request of the SSA. (Tr. 445-452).  Mr. James determined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand/walk 6 hours in an 8- hour workday, sit (with normal breaks) 6 hours in an 8-hour workday, and push and/or pull without limit. (Tr. 446).  Mr. James found that Plaintiff had unlimited manipulative limitations, visual limitations, postural limitations, communicative limitations or environmental limitations (Tr. 446-450).  Mr. James determined that Plaintiff's MER supported her allegations of a MDI, but that there were no objective findings to support the alleged severity of Plaintiff's symptom. (Tr. 451).

On August 1, 2008, Plaintiff was seen by Martha Putney, Ph.D., who completed a Psychiatric Review Technique Form at the request of the SSA. (Tr. 453-470).  Dr. Putney determined that Plaintiff had no restriction of daily living activities, moderate difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace and no episodes of decompensation of extended duration. (Tr. 463).

On August 1, 2008, Martha Putney, Ph.D., also completed a Mental Residual Functional Capacity Assessment at the request of the SSA. (Tr. 467-470).  Dr. Putney found that Plaintiff was moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and moderately limited in her ability to respond appropriately to changes in the work setting. (Tr. 468).  Dr. Putney found that Plaintiff was not significantly limited under any other summary conclusions. (Tr. 467-468).  Dr. Putney observed that Plaintiff "has moderate decrease in social but is able to understand and remember complex work related procedures and instructions, be cooperative and appropriate, adapt to a work setting with limited interpersonal responsibility, make work decisions, and perform complex mental tasks when clean and sober and as her physical limitations permit." (Tr. 467-469).

---

[2] Mr. James' credentials were not specified in the record.

On October 23, 2008, Plaintiff was seen by Donn O. Fuller, M.D., in regards to left foot and ankle pain. (Tr. 482-484).   Dr. Fuller obtained an x-ray of Plaintiff's left foot which was negative. (Tr. 483).

On November 10, 2008, Timothy Foster, Ph.D., completed a Psychiatric Review Technique form at the request of the SSA. (Tr. 484-498).   Dr. Foster recorded the following notes:

> Cl is 41 yr old at recon alleging bipolar.  Cl states in application that cl has no concentration.  'Very sense of memory' (I don't know what cl means by that statement.)  Cl states has flashbacks from PTSD.  Cl states, 'I can't listen to the voice anymore'.  (What is meant by that statement is that a physician and his family were killed).  They were family friends.  She did not witness this but the event traumatized her and she has not been able to hear a Dr.'s voice on the medical transcription technology without thinking about the dear Dr's family.  Cl has hx of work as legal secretary, a web master and worked as a private medical transcriptionist for 7 years.  Cl reports having a Master's degree.  It that is correct cl has been under employed.  Cl is on meds for anxiety and depression.  Cl admits to regular cannabis dependence (daily) since age 15.  Hx shows an in-patient psych and substance treatment for a week in 2002.  Cl is able to prepare meals, and do other normal daily tasks.  She is able to and does chat on line, plays video games and listens to music and does light housekeeping.  She appears to be cognitively intact but the depression and traumatic reaction appears to cause moderate limits in social and concentration function.  See MRFC.  Although the DLI condition appears to be unchanged from current condition I have no MSE or medical records from prior to DLI so that is rated as insufficient evidence.

(Tr. 497).  Dr. Foster also completed a Mental Residual Function Capacity Assessment on the same date and recorded the following:

> Memory is evaluated and found to be within normal limits.  Cl is able to understand, remember and carry out simple one and two step instructions; Cl is able to maintain CPP for two hour intervals, maintain regular attendance and complete a normal work week with moderate limits.  Her concentration appears to be impaired by traumatic memories of a dead Dr. and family; Cl appears to have moderate limits in the ability to relate appropriate to others including coworkers and supervisors on a sustained basis and is able to accept instructions and respond appropriately to criticism.  She generally relates by way of internet and not in person.  I am

rating that as a moderate limit since it appears to be from the PTSD; and Cl
has moderate limits in the ability to adapt to changes in the workplace.  Cl is
able to sustain concentrated, task oriented activity.

(Tr. 500-501).

On November 16, 2008, Murthy Ravipati, M.D., completed a Physical Residual

Functional Capacity Assessment requested by the SSA. (Tr. 503-510).  Dr. Ravipati found that

Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6

hours in an 8-hour workday and push-pull without limit. (Tr. 504).  Dr. Ravipati observed that

multiple exams including those of July 2008 and October 2008 showed Plaintiff had full range of

motion in her back and extremities. (Tr. 504).  Dr. Ravipati found that Plaintiff was having no

motor sensory deficits and had equal reflexes. (Tr. 505).  Dr. Ravipati noted that Plaintiff had an

intact gait and that the x-ray of her left foot was negative for symptomatology. (Tr. 505).  Given

these findings, Dr. Ravipati explained that only mild reductions were warranted at the time. (Tr.

505).  Dr. Ravipati concluded that Plaintiff's allegations as to the severity of her symptoms were

not entirely credible. (Tr. 508).

On December 15, 2009, Plaintiff was treated by Michael E. Frey, M.D., of Advanced

Pain Management and Spine Specialists for persistent pain. (Tr. 705-706).  Dr. Frey noted that

Plaintiff had been exhibiting symptoms consistent with a neuralgic pain syndrome involving the

left tibial nerve and lower left leg. (Tr. 705).  Plaintiff was evaluated in the pain clinic and

scheduled for a therapeutic neural block of the nerves suspected of causing pain. (Tr. 705).  Dr.

Frey remarked that the Plaintiff tolerated the procedure well. (Tr. 705-706).

On April 22, 2010, Dr. Nelson A. Hernandez completed a Mental RFC Assessment, a

Psychiatric Review Technique form # 12.04, a Psychiatric Review Technique form #12.06, a

Psychiatric Review Technique form #12.08, and a medical statement regarding PTSD form #

8:64. (Tr. 604-618).   Dr. Hernandez noted in his Mental RFC that Plaintiff had poor concentration, poor planning, and a history of mania and unpredictable mood swings. (Tr. 606). Dr. Hernandez noted that Plaintiff had marked difficulties in maintaining concentration, persistence or pace, easy distractibility, difficulty concentrating, and repeated episodes of decompensation, each of extended duration. (Tr. 612, 614).   Further, Dr. Hernandez noted that Plaintiff had autonomic hyperactivity, recurrent and intrusive recollections of a traumatic experience, marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence or pace. (Tr. 612).   Dr. Hernandez observed that Plaintiff had persistent disturbance of mood or affect, marked difficulties in maintaining social functioning and repeated episodes of decompensation, each of extended duration. (Tr. 614).   In the medical statement concerning PTSD, Dr. Hernandez noted that Plaintiff had "pervasive loss of interest in almost all activities, psychomotor agitation or retardation, difficulty concentrating or thinking, generalized persistent anxiety and recurrent recollections of traumatic experience." (Tr. 616).   Dr. Hernandez found Plaintiff's work limitations to be in the moderately impaired range with Plaintiff markedly impaired as to "the ability to understand and remember detailed instructions" and markedly impaired in "the ability to maintain attention and concentration for extended periods." (Tr. 616, 617-618).

### B.    Relevant Evidence Submitted to Appeals Council After Hearing

On September 1, 2009, Plaintiff presented to Advanced Pain Management and Spine Specialists and was seen by Michael Frey, M.D. (Tr. 720).   Dr. Frey noted that Plaintiff described sharp, aching, spasmodic, and burning pain in her foot following a foot surgery. (Tr. 720).   Dr. Frey noted that the pain is worse with standing, walking, anxiety, twisting, and bending, and is better in a prone position. (Tr. 720).   Dr. Frey noted that Plaintiff was

experiencing symptomatology of complex regional pain syndrome/sympathetic mediated pain. (Tr. 722).

On December 15, 2009, Plaintiff received a peripheral nerve block from Dr. Frey. (Tr. 705-706).  Dr. Frey noted that Plaintiff had been exhibiting symptoms consistent with a neuralgic pain syndrome involving the left tibial nerve and lower left leg and that the symptoms had been severe, disabling, and refractory to conservative care. (Tr. 705).  Dr. Frey noted that Plaintiff tolerated the procedure well. (Tr. 705).

On May 25, 2010, Plaintiff presented to Advanced Pain Management and Spine Specialist and was examined by Dr. Frey. (Tr. 702).  Dr. Frey noted that Plaintiff complained of left foot pain and had some difficulty with ambulation. (Tr. 702).  Dr. Frey recommended that Plaintiff have an MRI and x-ray performed on her left ankle and prescribed physical therapy. (Tr. 703, 714).  A urine analysis indicated positive for marijuana and benzodiazepines. (Tr. 716).

On June 1, 2010, a series of x-rays were taken of Plaintiff's left ankle. (Tr. 730).  These x-rays revealed the bones were normally mineralized and no acute displaced fracture or dislocation. (Tr. 730).  These x-rays also revealed a chronic avulsion of the medial malleolus with no acute abnormality identified and mild diffuse soft tissue swelling. (Tr. 730).  An MRI was taken of Plaintiff's left ankle the same day. (Tr. 728).  The MRI revealed that osseous structures demonstrated normal marrow signal and no bone contusion or osteochondral defect. (Tr. 728).

On June 2, 2010, Plaintiff presented to Advanced Physical Therapy and Rehabilitation with complaints of left ankle pain, swelling, weakness, balance/proprioceptive impairments and functional limitations. (Tr. 677, 679).  Sherry Nance, DPT, opined that Plaintiff would benefit from skilled physical therapy services. (Tr. 677).

On June 7, 9, 11, 17, 18, 23, 28, and 30, 2010, Plaintiff presented to Advanced Physical Therapy and Rehabilitation for physical therapy treatment. (Tr. 668-676).  Notes from these visits reveal that Plaintiff reported fluctuating pain in her left ankle.  For example, although Plaintiff reported that she tolerated her initial interventions without increased swelling or significant increase in sympathetic symptoms during her June 9 visit, Plaintiff reported increased pain in her left ankle during her June 11 and 17 visits. (Tr. 673-674, 675).  Notes from Plaintiff's June 18 visit reported decreased swelling in Plaintiff's left ankle and notes from Plaintiff's June 23 visit record that Plaintiff reported that she was tolerating treatment interventions without increased sympathetic symptoms of the left ankle. (Tr.672).  On June 28, Plaintiff reported that she had increased soreness in her lateral ankle due to her dog pushing her foot into inversion the previous day. (Tr. 670).  By June 30, Plaintiff reported that her ankle was feeling better since the incident with her dog. (Tr. 669).  Plaintiff stated that she was to being a walking program because she had more confidence in stressing her ankle without increased sympathetic symptoms. (Tr. 669).

On July 2, 2010, Plaintiff again presented to Advanced Physical Therapy and Rehabilitation for physical therapy treatment. (Tr. 668).  Plaintiff reported that she had hurt her ankle again when it was jammed between her dog's feeding dish and a fence. (Tr. 668).  Plaintiff was discharged and a report noted that she had decreased pain reports overall and decreased swelling/edema. (Tr. 685).

### C.     Vocational Expert Testimony

At the video hearing held before the ALJ on May 7, 2010, Vocational Expert Joyce Ryan (the "VE") testified as follows. (Tr. 81-95).  The VE testified that Plaintiff had previously

worked as a medical transcriber, as a librarian, as a sales clerk, as a legal secretary, and as a web

master. (Tr. 82). The ALJ then asked the following question:

> Assuming a younger individual with a high school education and the same past
> relevant work as the Claimant, with a residual functional capacity for work per the CV
> assessment at Exhibit 15F for light exertion defined in the Social Security regulations
> and in addition such an individual could occasionally climb ramps, stairs, ladders,
> scaffolds – ropes or scaffolds.  Frequently balance, stoop, kneel, crouch and crawl.
> Such an individual must avoid concentrated exposure to extremes of cold or heat and
> must avoid concentrated exposure to hazards.   In addition, the State Agency
> assessment at Exhibit 14F, such an individual is able to understand, remember and
> carry out simple one and two-step instructions.  Such an individual is able to maintain
> concentration, persistence and pace for two-hour intervals, maintain regular attendance
> and complete a normal work week.  Such an individual would have some, but not
> substantial limitations in relating appropriately to others, including coworkers and
> supervisors on a sustained basis.  Such an individual is able to accept instructions and
> respond appropriately to criticism.   Such an individual would have some, but not
> substantial limitations in adapting to changes in the work place.  Could such an
> individual perform the Claimant's past work?

(Tr. 83).  The VE testified "No, Your Honor." (Tr. 83).  The VE testified that such an individual

could perform the unskilled work at the light level of exertion dealing mostly with things such as

factory setting in assembly and sorting, like machine tending and inspecting. (Tr. 83).  Such jobs

include assembler of small products, assembler of printed products, and copying machine

operator. (Tr. 83-84).

The ALJ then asked the VE the following question:

> Assuming an individual of the same age, education and past relevant work as the
> Claimant with the residual functional capacity for work exertional limitation as stated
> in my first hypothetical and in addition such an individual would have marked, as
> defined as between ½ and 2/3 of an eight-hour work day limitations in the following
> areas: ability to understand and remember short and simple instructions; understand
> and remember detailed instructions; carry out detailed instruction; sustain an ordinary
> routine without special supervision; make simple work-related decisions; respond
> appropriately to changes in the work setting; travel in unfamiliar places; set realistic
> goals or make plans independently of others.  For the benefit of the hearing monitor,
> this is based on Exhibit 21F, Dr. Hernandez's assessment.   In addition, such an
> individual would have moderate limitations defined as 1/3 to ½ of the day in the
> following areas: remembering locations and work-like procedures; carrying out very
> short and simple instructions; maintaining attention and concentration for extended

-14-

periods; performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; working in coordination with or proximity of others without being distracted by them; making simple work – I'm sorry about that – completing a normal work day and work week without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public, asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism of supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; being aware of [inaudible], could such an individual perform the Claimant's past work?

(Tr. 84-85).  The VE responded that such an individual could not perform Plaintiff's past work and would be highly unlikely to perform any other work. (Tr. 85).

The VE was then examined by Plaintiff's attorney.  The VE testified that if an individual was limited to 1/3 to 50% of an eight hour day in the ability to remember work-like procedures, such a limitation would not, in and of itself, affect the unskilled jobs. (Tr. 86).  The VE explained that work at this level is repetitive and once it is learned, it is done mechanically, without thinking. (Tr. 87).  The VE testified that the moderate limitation of being unable to maintain attention and concentration for extended periods would not affect unskilled work because such jobs are performed mechanically. (Tr. 87).  The VE testified that an individual that did not have the ability to perform activities within a schedule would not be able to maintain such jobs. (Tr. 88).  The VE testified that a person missing more than a day a month in whatever configuration or consistently late or absent would not be able to maintain such jobs. (Tr. 88).  The VE testified that such jobs involve no interaction with the public and limitations on a worker's ability to interact with the public does not affect the worker's ability to do the job. (Tr. 89).  The VE testified that there is little change in the work setting for unskilled jobs. (Tr. 89).  The VE testified that if one is frequently unable to meet production goals and rates then the person would not be able to maintain an unskilled job. (Tr. 90).  The VE testified that there would be some jobs

for a hypothetical individual with the same age and background as Plaintiff and who was limited 50% to 2/3 of an eight-hour day with the ability to make simple work-related decisions, because there is no decision making in unskilled jobs. (Tr. 90-91).  The VE testified that if a hypothetical individual has constant shoulder pain and the inability to lift their arms occasionally, such a person could not perform unskilled work because such jobs require workers to lift their arms above their waists. (Tr. 94-95).

## III.   SPECIFIC ISSUES AND CONCLUSIONS OF LAW

Plaintiff raises eight issues in her Motion for Summary Judgment (Doc. 120) which the Court construes as Plaintiff's Memorandum in Support of the Complaint.  The eight issues are: 1) whether the additional evidence submitted to the Appeals Council warrants a fully favorable decision by the Appeals Council or a remand to the ALJ for a new hearing; 2) whether the ALJ's denial of benefits at step 5 of the sequential evaluation review process is inconsistent with the severity of her impairments and degree of functional limitations; 3) whether Plaintiff's restricted physical and mental RFC allows for the performance of jobs cited by the VE; 4) whether the ALJ properly assessed Plaintiff's Mental RFC regarding her ability to relate to others, accept instructions, and respond to criticism; 5) whether the ALJ erred by failing to consider the effect of Plaintiff's obesity in determining her RFC; 6) whether the ALJ erred by discrediting Plaintiff's statements and testimony regarding pain and functional limitations; 7) whether the ALJ erred in failing to afford controlling weight to statements of Plaintiff's treating and examining physicians; and 8) whether the ALJ's failure to comply with SSR 96-6 constitutes reversible error. (Doc 12 p. 1-2).

**A)   Whether the additional evidence submitted to the Appeals Council warrants a fully favorable decision by the Appeals Council or a remand to the ALJ for a new hearing.**

In the Court's previous Report and Recommendation (Doc. 20), the Court recommended that the decision of the Commissioner be reversed and remanded because the Appeals Council failed to evaluate new evidence submitted to it. (Doc. 20 p. 19).   The District Court rejected this recommendation, finding instead that the Appeals Council had properly evaluated the new evidence. (Doc. 22 p. 3).   The District Court explained that this Court had convoluted the legal issues of whether the new evidence was evaluated by the Appeals Council and whether the Appeals Council was required to further articulate its findings and rational for denying review of the evidence.   According to the District Court, the Appeals Council is not required to further articulate its findings and rational when it considers new evidence but denies review. (Doc. 22 p. 3).   Citing   *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1260 (11th Cir. 2007), the District Court explained that when a claimant properly presents new evidence to the Appeals Council which is considered, but the Appeals Council denies review, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous. (Doc. 22 p. 3-4) (citing *Ingram,* 496 F.3d at 1262).   This requires a district court to determine whether the decision of the Commissioner is supported by substantial evidence on the record as a whole, including the new material submitted to the Appeals Council. (Doc. 22 p. 4) (citing *Ingram,* 496 F.3d at 1266).   Thus, as Plaintiff properly submitted new evidence to the Appeals Council which was considered but denied review, this Court must make a determination as to whether the new evidence renders the denial of benefits erroneous.   The Court will make this determination pursuant to *Ingram* by analyzing whether the decision of the Commissioner is supported by

substantial evidence on the record as a whole, including the new material submitted to the Appeals Council.

The Court begins this analysis by noting that the Appeals Council "shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).  In this case, the additional evidence submitted by Plaintiff to the Appeals Council includes: (1) physical therapy treatment records for the period of June 2, 2010, through July 2, 2010; (2) medical records from Dr. Bradley Troupe for the period February 16, 2011, through February 18, 2011; (3) medical records from Dr. Michael Frey for the period of December 17, 2009, through June 1, 2010; (4) records from Dr. Nelson Hernandez for the period of May 5, 2010, through June 27, 2011; and (5) records from Dr. Dean Traiger from 2011. (Tr. 284, 667-784).  The ALJ entered her decision on October 29, 2010, and thus, the Court will only consider the additional evidence submitted by Plaintiff that relates to the period before this date.

Upon review of the record as a whole, including the additional evidence submitted by Plaintiff to the Appeals Council which relates to the period on or before the date of the ALJ's decision, the Court finds that substantial evidence supports the Commissioner's decision. Although Plaintiff correctly argues that the additional evidence from Advanced Physical Therapy & Rehabilitation dates June 2, 2010 through July 2, 2010, indicated that Plaintiff reported increased pain in her foot and ankle that at times kept her from walking, other notes in these records support the decision of the Commissioner.  These notes show that at the end of her treatment with Advanced Physical Therapy, Plaintiff reported that she was pleased with her progress and less fearful of activities. (Tr. 682).  The discharge report noted decreased pain overall, decreased swelling, and improvements in ankle strength and range of motion. (Tr. 685).

Plaintiff reported that on average her pain was 2-3 on a scale of 10 with 10 being the worst. (Tr. 668).   In June of 2010, Plaintiff reported that her ankle felt better and her goal was to begin a walking program because she was de-conditioned. (Tr. 669).   The treating source reported improved "heel raise mechanics including improved eccentric control of mid/rearfoot pronation." (Tr. 675).   Plaintiff reported that she tolerated initial interventions without increased swelling or significant increase in sympathetic symptoms. (Tr. 671, 675).

This new evidence is cumulative to evidence the ALJ already considered regarding Plaintiff's complaints of left foot pain.   In his opinion, the ALJ provided an in depth analysis of the medical evidence pertaining to Plaintiff's complaint of persistent foot pain.   Citing to Plaintiff's medical record, the ALJ noted that after Plaintiff's October 2007 left foot surgery, the record does not show that she had any persistent foot pain until she stepped on glass in April 2008. (Tr. 41).   The ALJ noted that the record did not show any evidence that Plaintiff needed any additional surgery, and that the opinion of Dr. Marino in July 2008 was that there was no evidence of radiculopathy and that Plaintiff's neurological examination was completely normal. (Tr. 41).   The ALJ noted Dr. Marino's opinion that Plaintiff's pain symptoms were related to her emotional process. (Tr. 41).   The ALJ noted that although Dr. Micovic in July 2008 diagnosed reflex sympathetic dystrophy and prescribed Liboderm and exercise, an x-ray of Plaintiff's left foot was negative and revealed only a minimal injury that required physical therapy. (Tr. 41). The ALJ noted that when Plaintiff complained of foot pain to Dr. Micovic in July 2009, he said that she had almost "flight of ideas" behavior when talking about her pain, indicating multiple other issues. (Tr. 41).

Further, in reaching his conclusion that Plaintiff is not disabled, the ALJ performed a thorough review of the record.   The ALJ found that Plaintiff's allegations of total and complete

disability were belied by reports that she takes part in a wide range of activities.  The ALJ cited

to a written report of Plaintiff's father, Edward Wells, that recorded that Plaintiff used the

computer and watched television during the day.  The ALJ noted that Plaintiff fed, groomed,

played with her pets, made herself sandwiches and frozen meals, rode in a car, shopped in stores

and by computer, and could use a checkbook. (Tr. 42).The ALJ noted that on June 3, 2008,

Plaintiff reported that during the day she spent time on the internet reading, writing, and creating

art. (Tr. 42).  Additionally, the ALJ explicitly considered the opinions of Plaintiff's treating

physician and state agency evaluators in reaching his determination.

Given that the relevant additional evidence pertains to a severe impairment that the ALJ

found at Step Two (i.e., evidence of left foot pain) and that he explicitly considered the

impairment in determining Plaintiff's RFC, the Court finds that the ALJ's decision would not be

altered by consideration of the additional evidence provided to the Appeals Council.  The ALJ's

opinion was supported by substantial evidence and thus, the Court does not recommend a

remand to the ALJ for a review of the additionally submitted evidence.

**B)  Whether the ALJ's denial of benefits at step 5 of the sequential evaluation review process is inconsistent with the severity of her impairments and degree of functional limitations**

Plaintiff argues that her reflex sympathetic dystrophy syndrome (RSDS) of left lower

extremity limits her RFC to a far greater extent than recognized by the ALJ. (Tr. Doc. 12 p. 15).

Additionally, Plaintiff argues that the record demonstrates that her mental functioning is more

restricted than determined by the ALJ. (Doc. 12 p. 16).  Plaintiff contends that her ability to

perform simple, routine repetitive tasks, get along with others, deal with the public, respond to

supervisors, respond to changes in a work setting, be punctual, and attend work on a regular

basis is severely eroded. (Doc. 12 p. 16).

Defendant notes that the ALJ recognized Plaintiff had a history of RSDS of the left lower extremity and listed it among Plaintiff's severe impairments. (Doc. 15 p. 9). Defendant contends that merely because Plaintiff has this condition does not mean her condition causes disabling limitations. (Doc. 15 p. 9).  Defendant argues that the evidence before the ALJ does not support Plaintiff's allegations. (Doc. 15 p. 10).

In all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);  ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512, 416.912.  It is not the diagnosis of an impairment that determines disability; rather, it is the effect the impairment has on Plaintiff's ability to function. The United States Supreme Court stated that the Social Security Act clearly defines "disability" in terms of the effect a physical or mental impairment has on an individual's ability to function in the workplace. *Bowen v. Yukert*, 482 U.S. 137, 145 (1987); SSR 96-8pll, 61 Fed. Reg. 34475 (1996)

In this case, the ALJ that found that Plaintiff had the severe impairment of "history of reflex sympathetic dystrophy of left lower extremity." (Tr. 35).  Despite this finding, the ALJ did not adopt the level of limitations Plaintiff deems is proper given her RSDS.  Upon review of the record, the Court finds that the ALJ considered the evidence before her in assessing Plaintiff's RFC and that her opinion is supported by substantial evidence.  In October 2007, Plaintiff underwent an excision of a soft tissue mass due to a left foot injury. (Tr. 38, 398).  Dr. Marino, who examined Plaintiff in July 2008 stated there was no evidence of radiculopathy and her neurological examination, other than her sensory complaints and behavior, was completely

normal (Tr. 434). Although Plaintiff had a traumatic left intermediate digital cutaneous neuropathy of the dorsum of the foot, he opined that Plaintiff's symptoms of pain were also "wrapped up in a more comprehensive emotional/ chronic multi-focal pain type of process" (Tr. 434).

Additionally, Dr. Fuller examined Plaintiff in October 2008 for left foot and ankle pain (Tr. 39, 482-84). Dr. Fuller found no significant swelling. X-rays were essentially negative, and the impression was of possible early sympathetic dystrophy of the left foot following minimal injury (Tr. 483).

Further, Dr. Micovic examined Plaintiff in July 2009 and observed that Plaintiff had "almost 'flight of ideas' behavior" talking about her pain "indicating multiple other issues" (Tr. 39, 564). Dr. Micovic recommended Plaintiff undergo a lumbar sympathetic block. He noted that Plaintiff was upset that he was "not willing to give her something to relieve her pain" and was "unwilling to follow my advice regarding the treatment" (Tr. 564).

Despite Plaintiff's argument to the contrary, the ALJ's opinion demonstrates that the ALJ carefully considered all of Plaintiff's severe impairments, including Plaintiff's RSDS in making his RFC determination.  Accordingly, the Court will not disturb the ALJ's RFC on review.

### C) Whether Plaintiff's restricted physical and mental RFC allow for the performance of jobs cited by the VE.

Plaintiff argues that the ALJ erred by relying on the VE's testimony to deny Plaintiff's claim. (Doc. 12 p. 17).  Specifically, Plaintiff argues that her specific vocational preparation level should be a 1, not a 2 for General Education Development. (Doc. 12 p. 17).  Further, Plaintiff contends that the ALJ erred by failing to comply with SSR 00-04p's requirement that the ALJ must ask the VE if the evidence he or she has provided conflicts with the information contained in the Dictionary of Occupational Titles (DOT). (Doc. 12 p. 16).

Defendant argues that Plaintiff has failed to explain the conflict between the DOT and the VE's testimony and that an SVP level of 2 is not inconsistent with the limitations found by the ALJ. (Doc. 15 p. 14).   According to Defendant, Plaintiff has not provided support for her argument, and thus, the Court is under no obligation to consider it. (Doc. 15 p. 14).

An ALJ's reliance on VE testimony is proper if the hypothetical posed to the expert adequately portrayed her impairments and limitations and the expert identified a significant number of jobs compatible with the limitations and capacities set forth in the hypothetical. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   In this case, the hypothetical question the ALJ posed to the VE encompassed all of the impairments and limitations the ALJ found in her RFC assessment of Plaintiff.   Accordingly, the ALJ did not err by relying on the testimony of the VE regarding Plaintiff's ability to perform other jobs.   Plaintiff fails to specify any inconsistency between her RFC and the VE's testimony that Plaintiff could work SVP level 2 employment.   Instead, Plaintiff argues only that "Level 2 specific vocational preparation is too much for [Plaintiff]". (Doc. 12 p. 17).   In the absence of any such inconsistency, the Court finds that the ALJ did not err by relying on the VE's testimony.

To the extent that Plaintiff is arguing that the ALJ committed reversible error by failing to ask the VE, pursuant to SSR 00-04p, whether her testimony was consistent with the DOT, the Court finds this argument unconvincing.   Although, as Defendant concedes, the ALJ did not specifically ask the VE whether her testimony was consistent with the DOT as required under SSR 00-4p, Plaintiff fails to identify any such inconsistency in this case.   As the ALJ's failure to inquire as to the consistency of the VE's testimony with the DOT does not impact a substantive right of a claimant when there is no actual inconsistency, the Court will not recommend that the

case be remanded due to this failure. *See, e.g., Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988).

  **D) Whether the ALJ properly assessed Plaintiff's Mental RFC regarding her ability to relate to others, accept instructions, and respond to criticism.**

  Plaintiff argues that the "ALJ's finding the claimant is limited to concentrating and persisting for 2 hour segments and that she has some, but not substantial, limitations in her ability to relate appropriately to others, accept instructions, and respond to criticism does not represent a valid Mental Residual Functional Capacity." (Doc. 12 p. 18-19). Plaintiff contends the ALJ erred by failing to address Plaintiff's ability to concentrate on and persist at work related activities after expiration of the 2-hour segments, how long Plaintiff must be away from the task until returning to the task, or how often Plaintiff would be absent from work. (Doc. 12 p. 19).

  Defendant responds that the ALJ properly assessed Plaintiff's RFC based upon the record in its entirety, and resolved conflicts in the evidence. (Doc. 15 p. 14). Defendant contends that the ALJ stated that he considered all the evidence and that this statement is confirmed by the ALJ's discussion of the record. (Doc. 15 p. 15).

  In this case, the ALJ's opinion demonstrates that she properly considered all the evidence and that substantial evidence supports her determination of Plaintiff's mental RFC. The ALJ reviewed the opinion of State agency psychological consultant Dr. Timothy Foster who concluded that Plaintiff had a post-traumatic stress disorder and substance addiction disorder that resulted in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintain concentration, persistence, or pace, and no episodes of decompensation. (Tr. 35).

  Additionally, the ALJ explicitly discussed the opinion of Dr. Claudia Zsigmond in her opinion. (Tr. 38). Dr. Zsigmond found that Plaintiff had a history of anxiety and depression, as

well as drug abuse and using marijuana for 20 years. (Tr. 38).  Dr. Zsigmond mental status examination of Plaintiff indicated Plaintiff was alert and well oriented with no symptoms of psychosis or suicidal tendencies. (Tr. 38).  Plaintiff demonstrated good recall of recent and remote events, suggesting no severe short-term or long-term memory impairment. (Tr. 38).  Dr. Zsigmond determined that Plaintiff had a global assessment of function (GAF) of 53, consistent with moderate symptoms or moderate difficulty in social, occupational or school functioning. (Tr. 39).

The ALJ discussed Dr. Nelson Hernandez's initial psychiatric evaluation from October 30, 2009. (Tr. 40).  The ALJ noted that Dr. Hernandez found that Plaintiff had minimal anxiety, depression. (Tr. 40).  Further, Dr. Hernandez noted that Plaintiff suffered no delusions, her judgment and perceptions were normal, and that she denied suicidal ideation. (Tr. 40).  Dr. Hernandez found that Plaintiff had a GAF score of 60-65, consistent with some mild symptoms such as depressed mood and mild insomnia or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. (Tr. 40).  The ALJ also discussed Dr. Hernandez's mental RFC assessment from April 22, 2010. (Tr. 40).  The ALJ noted Dr. Hernandez's finding that Plaintiff had markedly limited ability to understand and remember very short and simple instructions and detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Tr. 40).  Dr. Hernandez assessed Plaintiff with marked difficulties in maintaining social functioning, maintaining concentration, persistence, or pace and repeated episodes of decompensation, each

of extended duration since February 15, 2007. (Tr. 40).  As will be explained below at length, the

ALJ properly discredited this opinion of Dr. Hernandez.

Accordingly, the Court finds that the ALJ determination of Plaintiff's mental RFC is

supported by substantial evidence.  The ALJ's determination of Plaintiff's mental RFC is not

invalid and the Court finds that the ALJ did not err in this regard.

### E)   Whether the ALJ erred by failing to consider the effect of Plaintiff's obesity in determining her RFC.

Plaintiff argues the ALJ erred by failing to consider the limitations Plaintiff's obesity will

pose in exertional functional capacities such as walking, lifting, carrying, pushing, and pulling.

Also, Plaintiff argues that the ALJ failed to recognize the effect her obesity will have on her

impairments, particularly her lower extremity pain secondary to RSDS. (Doc. 12 p. 19).

Defendant responds that the evidence Plaintiff cites to is largely irrelevant to the period at issue

as it pertains to a hospital visit six years before Plaintiff's alleged disability onset date, and a

doctors finding after the ALJ's hearing decision. (Doc. 15 p. 16).

Here, the Court finds that the ALJ did not err by failing to consider Plaintiff's obesity in

determining her RFC.  As explained above, a plaintiff bears the ultimate burden of proving

disability, and is responsible for furnishing or identifying medical and other evidence regarding

her impairments.  *Bowen*, 482 U.S. at 146 n.5 (1987) ("An individual shall not be considered to

be under a disability unless he furnishes such medical and other evidence of the existence thereof

as the Commissioner of Social Security may require.").  In this case, the only medical evidence

Plaintiff cites to in support of her claim that she has the severe impairment of obesity are: 1)

medical records regarding a hospitalization in approximately six years before Plaintiff's alleged

onset date, and 2) the medical findings of Dr. Troupe from July 2011, nearly ten months after the

ALJ's decision.  Plaintiff fails to identify any relevant evidence that her RFC is more limited

than that found by the ALJ due to her obesity. Accordingly, the Court finds that substantial evidence shows the ALJ did not err regarding Plaintiff's obesity.

**F)** **Whether the ALJ erred by discrediting Plaintiff's statements and testimony regarding pain and functional limitations.**

Plaintiff argues the ALJ erred in her determination that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms during the period at issue, are not credible. (Doc. 12 p. 22). Plaintiff contends that she has a long history of pain which is supported by evidence in the record, testimony and medical records regarding her symptoms. (Doc. 12 p. 22). Defendant argues that the ALJ considered all the objective medical evidence and gave explicit and adequate reasons for discrediting Plaintiff's allegations. (Doc. 15 p. 20).

The Eleventh Circuit has established a three-part "pain standard" that courts must follow to determine if a claimant's subjective complaints of pain support a finding that the claimant is disabled. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.* "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* In determining credibility, the ALJ must consider the entire case records, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the

case record. *Glover v. Comm'r of Social Sec.*, 2012 WL 84775, at *8 (M.D. Fla. 2012) (citing SSR 96-7p.). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In this case, after carefully considering the evidence, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements concerning the intensity, persistent, and limiting effect of these symptoms are not credible to the extent they are inconsistent with Plaintiff's RFC. (Tr. 41). In reaching this conclusion the ALJ explicitly and adequately explained her determination. The ALJ noted that Plaintiff is alleging complete and total disability since February 15, 2007, but evidence of record indicates that her treatment has been conservative and non-aggressive. (Tr. 41). Further, the ALJ explained that Plaintiff's testimony is not supported and is inconsistent with the medical evidence of record and that Plaintiff has a poor work record indicating a lack of motivation to work. (Tr. 41). Finally, the ALJ remarked that the medical evidence of record fails to confirm the subjective severity of her condition. (Tr. 41).

Citing to Plaintiff's medical record, the ALJ noted that after Plaintiff's October 2007 left foot surgery, the record does not show that she had any persistent foot pain until she stepped on glass in April 2008. (Tr. 41). The ALJ noted that the record did not show that Plaintiff needed any additional surgery, and that the opinion of Dr. Marino in July 2008 was that there was no evidence of radiculopathy and that Plaintiff's neurological examination was completely normal. (Tr. 41). The ALJ recorded that Dr. Marino opined that Plaintiff's pain symptoms were related to her emotional process. (Tr. 41). The ALJ noted that although Dr. Micovic in July 2008 diagnosed reflex sympathetic dystrophy and prescribed Liboderm and exercise, an x-ray of Plaintiff's left foot was negative and only minimal injury that required physical therapy. (Tr. 41).

Further, the ALJ found that Plaintiff's allegations of total and complete disability were belied by reports that she takes part in a wide range of activities.  The ALJ cited to a written report of Edward Wells that recorded that Plaintiff used the computer and watched television during the day. (Tr. 42).  The ALJ noted that Plaintiff fed, groomed, played with her pets, made herself sandwiches and frozen meals, rode in a car, shopped in stores and by computer, and could use a checkbook. (Tr. 42).  The ALJ noted that on June 3, 2008, Plaintiff reported that during the day she spent time on the internet reading, writing, and creating art. (Tr. 42).

As the ALJ clearly articulated her credibility decision, which was supported by substantial evidence, the Court will not disturb the ALJ's determination that Plaintiff is not disabled. *See Foote*, 67 F.3d  at 1562.

### G) Whether the ALJ erred in failing to afford controlling weight to statements of Plaintiff's treating and examining physicians.

Plaintiff argues that the ALJ erred by not affording controlling weight to statements of Plaintiff's treating and examining physicians. (Doc. 12 p. 20).  In particular, Plaintiff argues that the ALJ erroneously rejected the opinion of Plaintiff's treating psychiatrist Dr. Nelson Hernandez and one-time examining psychologist Dr. Claudia Zsigmond. (Doc. 12 p. 20). Defendant contends that the ALJ gave good reasons for the weight given to Dr. Hernandez's opinion.  Also, Defendant argues that the ALJ had no obligation to give Dr. Zsigmond's opinion controlling weight, as one-time examining sources are not entitled to controlling weight.

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a

claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physician and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d at 1240. The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the ALJ found that the determinations of Dr. Hernandez were not "credible as the opinion was not 'well supported' by medically acceptable clinical findings and treating progress notes in the record." (Tr. 42). The ALJ pointed out that when Plaintiff saw Dr. Hernandez on April 15, 2010, she was feeling better and had less mood swings, no racing thoughts, and sleep and appetite were fair. (Tr. 42, 590). The ALJ found that Dr. Hernandez relied heavily on the symptoms and limitations provided by the Plaintiff and uncritically accepted as true most, if not all, of what Plaintiff reported. The ALJ noted that "as explained elsewhere in this decision, there exists good reasons for questioning the reliability of [Plaintiff's] subjective complaints." (Tr. 42). Thus, given her discussion of the explicit reasons he accorded Dr. Hernandez's opinion no weight, the Court finds that the ALJ did not err in this determination.

Additionally, the ALJ did not err by failing to accord the opinion of Dr. Zsigmond substantial weight.  The opinions of one-time examining sources are not entitled to any special deference. *See Crawford,* 363 F.3d at 1160.   As Plaintiff's medical record shows that Dr. Zsigmond only examined Plaintiff a single time, the ALJ did not err by failing to accord Dr. Zsigmond's opinion substantial weight.

For these reasons, the Court finds that Plaintiff did not err by not according Dr. Hernandez's and Dr. Zsigmond's opinions controlling weight.

### H)   Whether the ALJ's failure to comply with SSR 96-6p constitutes reversible error.

Plaintiff argues that the ALJ erred by failing to include in her RFC determination the specific limitations the State Agency reviewing psychologist, Timothy Foster, Ph.D., expressed in a Psychiatric Review Technique form and in a Mental Residual Functional Capacity Assessment form. (Doc. 12 p. 21).  Plaintiff argues that the ALJ's opinion is inconsistent because he made findings pertaining to Plaintiff's RFC that are less restrictive for work than Dr. Foster's opinion, which the ALJ accorded great weight. (Doc. 12 p. 22).  In response, Defendant argues that ALJ properly considered the findings of Dr. Foster. (Doc. 15 p. 18).

SSR 96-6p provides that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review." "State agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence,

except for the ultimate determination about whether you are disabled." 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(i).

In this case, at step three of the sequential evaluation, the ALJ noted Dr. Foster's finding that Plaintiff had a post-traumatic stress disorder and substance addiction disorder that resulted in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 35).  The ALJ found that this opinion was supported by the medical evidence and was consistent with the record as a whole. (Tr. 35).  The ALJ accorded Dr. Foster's opinion great weight. (Tr. 35).

Contrary to Plaintiff's argument, the Court does not find that there is any inconsistency between the ALJ's decision to accord Dr. Foster's opinion great weight and the ALJ's ultimate RFC determination.  Dr. Foster and the ALJ both found that Plaintiff is able to concentrate and persist for two hour intervals, maintain regular attendance, and complete a normal workweek. (Tr. 37, 501).  Both found that Plaintiff is able to understand, remember, and carry out simple instructions. (Tr. 37, 501).  Finally, both found that Plaintiff has a less than marked limitation in her ability to relate to others, accept instructions, and respond to criticism. (Tr. 37, 501).  For these reasons, the Court finds that the ALJ did not err in considering Dr. Foster's opinion.

### IV.     CONCLUSION AND RECOMMENDATION

The Court finds that the Commissioner's decision is consistent with the requirements of law and is supported by substantial evidence.  Therefore, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED**.

**In Chambers, Fort Myers, Florida, this 11th day of February, 2014.**

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

### Notice to Parties

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Copies to counsel of record